# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2004   Decided January 7, 2005

No. 03-3115

UNITED STATES OF AMERICA,
APPELLEE

v.

THOMAS L. WEST,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00519-01)

———

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.,* U.S. Attorney at the time the brief was filed, *John R. Fisher*, *Elizabeth Trosman*, and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and EDWARDS and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Appellant Thomas L. West was convicted by a jury of possession with intent to distribute 50 grams or more of cocaine base in violation of § 841(a)(1) and (b)(1)(A)(iii) of the Drug Abuse Prevention and Control Act (the "Controlled Substances Act" or the "Act"). 21 U.S.C.A. § 841(a)(1) & (b)(1)(A)(iii) (West 1999 & Supp. 2004). Appellant's arrest occurred after a foot chase following a traffic stop that was initiated when appellant allegedly drove through a stop sign. According to the Government, when the foot chase culminated in a physical struggle between appellant and the pursuing officers, appellant threw down an object which was later identified as a bag containing crack cocaine. Appellant argued that he was stopped on a pretext and that the officer's testimony regarding the drugs was not credible.

On appeal, appellant seeks a new trial, arguing that the trial court erred when it (1) allowed the Government to introduce a copy of his conviction for driving without a permit on the evening of his arrest, and (2) denied his request for a "missing-evidence" instruction based on the Government's failure to produce a copy of the stop sign citation allegedly issued by the arresting officers. Alternatively, appellant seeks a remand for resentencing, arguing that the District Court erred in doubling his mandatory minimum prison term from 10 to 20 years on the basis of a single prior misdemeanor drug conviction in Maryland. We find no merit in appellant's new trial arguments. We agree, however, that the District Court erred in enhancing appellant's sentence by 10 years.

Section 841(b)(1)(A) requires imposition of an enhanced mandatory minimum of 20 years' imprisonment when a defendant has a "prior conviction for a felony drug offense." 21 U.S.C.A. § 841(b)(1)(A). Appellant's Maryland misdemeanor conviction carried with it the possibility of up to four years in prison; he received a sentence of one year with all but eight days

suspended. In determining that appellant's prior Maryland misdemeanor triggered an enhancement under § 841(b)(1)(A), the District Court relied solely on § 802(44), which defines a "felony drug offense" as any offense punishable by over one year in prison. 21 U.S.C. § 802(44) (2000). Looking to the language and structure of the relevant provisions of the statute, and considering the applicable canons of statutory construction, including the rule of lenity, we are convinced that § 841(b)(1)(A) must be read *in pari materia* with § 802(44) *and* § 802(13), which defines a "felony" as an offense classified by applicable law as a felony. *See* 21 U.S.C. § 802(13). Under this reading, a prior drug conviction will only provide the predicate for a 10-year § 841(b)(1)(A) enhancement if it is *both* punishable by more than one year and characterized as a felony by the controlling law. Therefore, we remand the case to the District Court with instructions to vacate appellant's sentence and resentence him to the applicable mandatory minimum of 10 years' imprisonment.

## I. BACKGROUND

The Government and the defense present similar, though not identical, pictures of the events leading to appellant's arrest in December 2002. The main points of difference involve appellant's alleged running of a stop sign and whether the drugs recovered from the ground where appellant was eventually detained belonged to him. The defense theorized that the traffic stop was pretextual and that, because appellant fled and physically resisted arrest, the officers then charged him with possession of drugs that did not belong to him. Key to appellant's case was the absence of any traffic citation to corroborate the officers' claim that he drove through a stop sign.

### A. *Trial Evidence*

The Government's evidence consisted largely of the testimony of the two arresting officers. The officers testified

that appellant drove through a stop sign at approximately 25 miles per hour as he turned from Atlantic Street onto Barnaby Street in Southeast Washington, D.C. According to the officers, after they pulled appellant over, he stepped from his car and turned to face them. When the officers ordered appellant back into his car, he fled.

Ignoring repeated orders to stop, appellant ran into the 800 block of Southern Avenue. When he fell, Officer Chumbley tackled him. Officer Chumbley testified that, at some point during their struggle, he saw appellant toss an object with his right hand. Officer Chumbley stated that after the object hit the ground, he saw that it was a clear bag containing a white rock substance. Officer Bevilacqua testified that appellant "made a motion with his right hand out to the side," but he did not see a bag or any other object leave appellant's hand. Trial Transcript ("Trial Tr.") at 345. The officers testified that appellant continued to struggle after the alleged toss. Eventually, Officer Chumbley temporarily blinded appellant with pepper spray and handcuffed him. The police recovered $143 from appellant.

The Government obtained a stipulation from the defense that a DEA analysis of the plastic bag's contents demonstrated that it contained 53.6 grams of cocaine base. A drug expert testified that the amount of cocaine was more consistent with sale than use.

During the defense case, an investigator testified that he visited the area of the arrest seven times in March and April of 2003. He stated that he observed a lot of foot traffic, and he noted that there appeared to be drug activity in the area. In addition, he testified that he could not make the turn from Atlantic onto Barnaby at more than 10 miles per hour and that to do so at 15 miles per hour would probably cause a driver to flip or hit another car. A friend of appellant's testified that appellant had helped him move on the evening of his arrest and that they parted sometime between 8:00 p.m. and 9:00 p.m. in

the area of appellant's arrest. The friend also testified that he was familiar with the apartment complex located in the 800 block of Southern Avenue and that it was "infested" with drugs. *Id.* at 462. The defense established that there were no fingerprints recovered from the bag containing the drugs.

**B.** *Admission of the Certified Copy of the No-Permit Conviction*

During his opening argument, defense counsel stated that the police would testify that they stopped appellant for running a stop sign and that they issued him a citation for that offense, but that the jury would not see the citation because the police did not have it. After openings, the prosecutor objected to any missing-evidence cross-examination or argument concerning the traffic stop. The Government admitted that it did not have the stop sign citation, but noted that appellant had been convicted of driving without a permit on the night of his arrest. Government counsel stated that if the defense raised the absence of either the stop sign or no-permit citations, he would seek to introduce a certified copy of the record of the appellant's no-permit conviction. The judge responded that the defense was only talking about a missing-evidence argument, not cross-examination to elicit evidence.

The trial judge re-raised the missing-evidence issue a bit later, stating that he would address the Government's concerns on an issue-by-issue basis. Government counsel responded that it would be inappropriate for the defense to argue that the missing citations suggested that the police were lying. He asserted that the citations were not in the Government's case file because traffic offenses are handled by the Corporation Counsel, that the certified copy of appellant's conviction for driving without a permit supported the conclusion that the officers issued both citations to appellant, and that it would be unfair to allow the missing-evidence argument since appellant was not being prosecuted for a traffic offense.

The court made its final ruling regarding the admission of the no-permit record during the cross-examination of Officer Chumbley. On direct, Chumbley testified that he determined, at the scene, that appellant did not have a driver's license. However, Officer Chumbley was asked nothing and said nothing about issuing any citations. During cross-examination, defense counsel questioned Officer Chumbley about his failure to issue a citation for the alleged stop sign violation. Officer Chumbley responded that he had issued a citation and given it to appellant. The officer then volunteered that he had also issued a citation to appellant for driving without a permit and had taken both citations to the Corporation Counsel. Though the testimony regarding the no-permit citation was arguably irrelevant and beyond the scope of counsel's examination, defense counsel did not object.

On redirect, Officer Chumbley indicated that he was unsuccessful in tracking down copies of the traffic tickets, but was able to obtain a certified copy of appellant's no-permit conviction. Again, defense counsel did not object. Defense counsel finally objected when the Government began to lay the foundation to introduce the certified record into evidence, arguing that the document was irrelevant and beyond the scope. The District Court admitted the record, holding, in pertinent part, that the no-permit and stop sign citations were issued at the same time by the same officer and that evidence of a conviction pursuant to one of the citations thus tended to prove the existence of the other citation.

## C. *The Trial Court's Denial of the Missing-Evidence Instruction*

During the instruction conference, the Government objected to appellant's request for a missing-evidence instruction regarding the Government's failure to produce a copy of the stop sign citation. The prosecutor argued, among other things, that a copy of the citation was not peculiarly within the power of the

Government to produce and could, in fact, be obtained by the defense from the Bureau of Traffic Adjudication or Superior Court. The defense argued that the citation was peculiarly within the power of the Government to produce, because "the last testimony" about the ticket was Officer Chumbley's statement that he "gave it to someone in the Seventh District." Trial Tr. at 396. The court ruled that there was no basis for giving a missing-evidence instruction because, among other reasons, the ticket was not peculiarly within the power of the Government to produce.

**D.** *Enhanced Sentence*

Prior to sentencing, the Government and appellant filed written memoranda addressing the enhancement issue. The Government argued that appellant's 1992 plea to a Maryland misdemeanor drug offense provided the predicate prior conviction for a felony drug offense necessary to trigger a doubling of the mandatory minimum from 10 to 20 years pursuant to § 841(b)(1)(A). The Government relied on § 802(44), a definitional provision within the Controlled Substances Act that describes a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic . . . substances." 21 U.S.C. § 802(44). Though classified as a misdemeanor under Maryland law, the offense to which appellant pled in 1992 was punishable by up to four years imprisonment. Appellant was incarcerated for eight days on the 1992 Maryland possession offense, with the remainder of his one-year prison term having been suspended.

Appellant argued that the enhancement provision did not apply for several reasons. Citing to § 802(13), which defines a "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony," 21 U.S.C. § 802(13), he argued that the pertinent statutory terms were contradictory and

ambiguous. He also argued that the Tenth Amendment, as well as the ex post facto and equal protection clauses, prohibited imposition of the enhancement based on his prior Maryland misdemeanor conviction. Following oral argument, the District Court ruled that imposition of the proposed enhancement would not violate the Constitution. *United States v. West*, 293 F. Supp. 2d 49 (D.D.C. 2003). The trial court did not address appellant's statutory construction argument.

Subsequently, at a sentencing hearing, the District Court, resting on *United States v. Glover*, 153 F.3d 749 (D.C. Cir. 1998), ruled that imposition of the enhanced mandatory minimum of 20 years was required. Prior to imposition of sentence, the Government admitted that the 20-year sentence was a "substantial if not staggering amount of time." Sentencing Transcript at 5. And the court acknowledged that if it did not believe itself bound to impose the additional 10-year enhancement, it would not do so. Addressing appellant, the court said, "I am convinced that you will not go back in that direction [referring to appellant's involvement with drugs], and I certainly hope you won't. But the Court is required to apply the law as Congress sees fit, and it is an awfully stiff sentence." *Id*. at 11. The court subsequently sentenced appellant to the enhanced mandatory minimum of 20 years in prison followed by 10 years of supervised release.

## II. ANALYSIS

### A. *New Trial Arguments*

On appeal, appellant argues that the District Court erred when it permitted the Government to introduce a copy of his no-permit conviction to counter the defense's suggestions that appellant did not run a stop sign and that the alleged traffic stop was pretextual. According to appellant, the copy of the no-permit citation was irrelevant, because proof that he was prosecuted for driving without a permit had no logical tendency

to establish that the police issued him a citation for failing to obey a stop sign. Appellant argues that the court exacerbated this erroneous evidentiary ruling by refusing to give a missing-evidence instruction based upon the Government's failure to produce the stop sign citation. According to appellant, the errors, taken together, were not harmless. Appellant points out that the Government's case rested entirely on the officers' testimony, so the erroneous admission of the no-permit citation, together with the denial of the missing-evidence instruction, badly weakened defense attempts to undermine the officers' credibility.

With respect to the admission of the copy of the no-permit citation, appellant gave away any argument he may have had when he conceded in his brief before this court that the no-permit conviction actually reinforced trial counsel's suggested inference that the police officers lied about the basis for the traffic stop. *See* Br. for Appellant at 26. And appellant cannot prevail on his claim regarding the missing-evidence instruction, because trial counsel clearly failed to establish the requisite foundation for giving the disputed instruction.

### 1. *Admission of the Copy of the No-Permit Conviction*

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. When a relevance objection is made at trial, admission of the referenced evidence is reviewed for abuse of discretion. *United States v. Smith*, 232 F.3d 236, 241 (D.C. Cir. 2000); *United States v. Askew*, 88 F.3d 1065, 1074 (D.C. Cir. 1996). Here we need not decide whether the trial court's admission of the copy of the no-permit conviction was error, because, on this record, any possible error was clearly harmless.

The District Court ruled that the certified copy of the no-permit conviction corroborated Officer Chumbley's testimony that he issued the no-permit citation at the same time that he issued the stop sign citation and that the conviction thus tended to demonstrate that a stop sign citation was issued. Assuming, as appellant argues, that this reasoning was entirely without logic and that admission of the document was thus an abuse of discretion, the error was, by appellant's own concession, harmless. As appellant points out in his brief, "evidence of the no-permit conviction, combined with Chumbley's testimony that he was unable to locate any record of the failure to stop citation, had the . . . tendency . . . to reinforce the inference raised on cross-examination that the police never issued a stop sign citation to West and that the officers lied about that and about the basis for the traffic stop itself." Br. for Appellant at 26.

Even absent this concession, given trial counsel's failure to object to the testimonial evidence regarding the no-permit citation and conviction, Trial Tr. at 276, 278, 280-81, there is nothing to indicate that the admission of the paper record added to any prejudice already caused by the uncontested preceding testimony. In light of that testimony, and after reviewing all that was presented to the jury, without stripping the presumed erroneous admission of the record from the whole, we can say with fair assurance that the jury's judgment was not substantially swayed by the necessarily cumulative effect of seeing a copy of the record of appellant's no-permit conviction. *See Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946).

### 2. *Denial of the Missing-Evidence Instruction*

A trial court's decision to refuse a request for a missing-evidence instruction is also reviewed for abuse of discretion. *See United States v. Tarantino*, 846 F.2d 1384, 1404 (D.C. Cir. 1988) (describing the standard of review when the analogous missing-witness instruction is denied). A missing-evidence instruction is appropriate if it is peculiarly within the power of

one party to produce the evidence and the evidence would elucidate a disputed transaction. *See United States v. Williams*, 113 F.3d 243, 245 (D.C. Cir. 1997) (describing the necessary foundation for an analogous missing-witness instruction); *United States v. Glenn*, 64 F.3d 706, 709 (D.C. Cir. 1995) (same). When these two requirements are met, jurors may be instructed that the controlling party's failure to produce the evidence permits them to draw the inference that the evidence would have been unfavorable to that party. *See id.*

In this case, the District Court correctly ruled that the instruction was not appropriate, because the record did not support the conclusion that the citation was peculiarly available to the Government. Appellant asserts that, because the Government failed to establish that the ticket was lost, the District Court's ruling was mistaken. Br. for Appellant at 28. But this argument is off the mark. As the proponent of the instruction, it was appellant's burden to show that the citation was peculiarly within the control of the Government. As the prosecutor pointed out during trial, "there is no reason why [appellant] if he wanted to have a copy of that ticket . . . couldn't just go to the bureau of Traffic Adjudication or to the Superior Court . . . and get a record of that citation." Trial Tr. at 381. Defense counsel offered no rejoinder to the prosecutor's assertion. He never indicated, for instance, that he had sought or subpoenaed a copy of the citation from Traffic Adjudication, Superior Court, or the Corporation Counsel and that someone from those offices claimed that it was lost or otherwise unavailable. Nor did he argue that there was some rule or policy preventing him from seeking or subpoenaing the record from the proper authorities.

Appellant offers nothing more convincing before this court. He asserts only that "it is unlikely that West would have received copies of the traffic citations after his altercation with the officers in which he was temporarily blinded and then

forcibly arrested." Br. for Appellant at 28. While this may suggest that appellant did not personally possess a copy of the citation, it does not establish that the ticket was within the control of the Government and thus not available to the defense.

**B.** *Sentence Enhancement*

The compelling issue in this case relates to appellant's claim that the District Court erred in doubling his sentence, from 10 to 20 years, on the basis of a misguided application of the sentence enhancement provision under 21 U.S.C.A. § 841(b)(1)(A). The sentencing issue raised by appellant turns on the construction of the statutory scheme in Title 21 establishing different penalties for various drug violations based on, among other factors, the type and quantity of the drug involved and the defendant's history of drug convictions. 21 U.S.C.A. §§ 841-863 (West 1999 & Supp. 2004). The District Court concluded that a state drug conviction that is classified as a "misdemeanor" under the applicable state law nonetheless constitutes a "prior conviction for a felony drug offense" under § 841(b)(1)(A) if the conviction was punishable by more than one year in prison. Applying a *de novo* standard of review, *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002), we hold that the District Court erred in its construction and application of § 841(b)(1)(A).

1. *Statutory Context*

Section 841(b)(1)(A)(iii) of the Controlled Substances Act provides that a person who is guilty of possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C.A. § 841(b)(1)(A)(iii). The relevant enhancement provision of § 841(b)(1)(A) provides:

If any person commits such a violation *after a prior conviction for a felony drug offense has become final*, such person shall be sentenced to a term of imprisonment which

> may not be less than 20 years and not more than life imprisonment . . . .

21 U.S.C.A. § 841(b)(1)(A) (emphasis added). The applicability of the 10-year enhancement thus turns on the meaning of the words "prior conviction for a felony drug offense." Although they are not defined in § 841(b)(1)(A), § 802, the definitional section of the Act, contains two facially relevant provisions. The first, § 802(13), defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). The second, § 802(44), defines the words "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Congress added § 802(44) to the Controlled Substances Act in 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, tit. IX, § 90105, 108 Stat. 1796, 1987-88. Prior to 1994, § 802 did not define "felony drug offense." 21 U.S.C. § 802 (Supp. V 1993). Rather, the words were defined only in § 841(b)(1)(A), which, consistent with § 802(13), described a "felony drug offense" as "an offense that is a felony under any provision of this subchapter or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances or a felony under any law of a State or a foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." 21 U.S.C. § 841(b)(1)(A) (Supp. V 1993).

2. *The Parties' Positions*

The issue in this case arises as a result of the 1994 amendments. Prior to 1994, a state misdemeanor drug

conviction could not provide the predicate offense necessary for a felony enhancement under § 841(b)(1)(A). *See United States v. Brown*, 33 F.3d 1014, 1017-18 (8th Cir. 1994). Only a prior drug conviction characterized as a felony by the controlling state authority could provide the necessary enhancement. *Id.* Thus, the question raised here is whether Congress, in enacting the 1994 amendments, intended to broaden the application of the felony enhancement in § 841(b)(1)(A) to make it applicable to state misdemeanor offenses that are punishable by more than a year in prison. The Government argues that it did, contending that § 802(44) alone defines a prior felony drug offense for purposes of § 841(b)(1)(A).

Looking to both the language and structure of the Act, appellant contends that § 841(b)(1)(A) must be construed by reference to both § 802(13) and § 802(44). Appellant argues that § 841(b)(1)(A) plainly refers only to *felony* drug convictions, so the definitional provisions under both § 802(13) and § 802(44) appear to apply. Appellant also reminds us that, under well-established case law, a court must always strive to interpret statutes to give meaning to all provisions and to achieve coherent and consistent results. Following these principles, appellant argues that the phrase "prior conviction for a felony drug offense" in § 841(b)(1)(A) must be read *in pari materia* with the definition of "felony" in § 802(13) and the definition of "felony drug offense" in § 802(44). Pursuant to this reading, the 10-year § 841(b)(1)(A) enhancement applies only when a defendant's prior conviction is (1) classified as a felony by applicable state or federal law and (2) punishable by more than a year in prison.

3. *Analysis*

In addressing the parties' conflicting positions, we must first decide whether the 1994 amendments manifest an unambiguous intent on the part of Congress to broaden the applicability of the disputed enhancement provision. If we find the statute

15

ambiguous on this point, we must turn to the rule of lenity to resolve the dispute. *See United States v. Nofziger*, 878 F.2d 442, 446 (D.C. Cir. 1989) (applying the rule of lenity, as well as the canon that criminal offenses requiring no *mens rea* are generally disfavored, to resolve an ambiguous statute in the defendant's favor). This is so because, in the criminal context, our assessment of the meaning of any particular statute is informed by "two policies that have long been part of our tradition." *United States v. Bass*, 404 U.S. 336, 348 (1971).

First, we require that "'fair warning . . . be given . . . in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id.* (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). "Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community," we require that legislatures, not courts, define criminal activity. *Bass*, 404 U.S. at 348. The latter policy reflects our society's "'instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.'" *Id.* (quoting H. Friendly, Mr. Justice Frankfurter and the Reading of Statutes, in BENCHMARKS 196, 209 (1967)). In short, Congress must be precise in providing fair notice of the specific criminal activity that is prohibited, as well as the punishment that will be imposed if the prohibition is violated.

Both of these policies find expression in the rule of lenity. "The [Supreme] Court has emphasized that the touchstone of the rule of lenity is statutory ambiguity." *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (quotations and citations omitted). "Where Congress has manifested its intention, [the courts] may not manufacture ambiguity in order to defeat that intention." *Id*. Where, however, "the language and structure" of an act contain a "grievous ambiguity or uncertainty . . . such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute," the rule of lenity requires

that the issue be decided in the defendant's favor. *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quotations and citations omitted); *see also Ratzlaf v. United States*, 510 U.S. 135, 148 (1994) (finding the relevant statute clear, but noting that were it ambiguous, "we would resolve any doubt in favor of the defendant").

The Supreme Court has directed that, in seizing everything from which aid can be derived, we must consider the "text, structure, and history" of the disputed legislation, *United States v. Granderson*, 511 U.S. 39, 54 (1994), including "ordinary rules of statutory construction," *United States v. Thompson/Ctr. Arms Co.,* 504 U.S. 505, 517 (1992). The plain language, of course, provides the first point of reference. *Braxtonbrown-Smith*, 278 F.3d at 1352. If the statutory language has a "plain and unambiguous meaning," the court's inquiry ends, provided that the resulting "statutory scheme is coherent and consistent." *United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002) (quotations and citations omitted). The determination of whether certain language is plain depends on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 353 (quotations and citations omitted).

In arguing that the language of the 1994 amendments is plain and unambiguous, the Government relies primarily on *United States v. Glover*, 153 F.3d 749 (D.C. Cir. 1998). According to the Government, in *Glover* this court "expressly found that the new definition in section 802(44) did precisely what its language says, *i.e.*, made section 841(b)'s enhancement apply based on the possible term of punishment for the prior offense," without reference to the definition of felony in § 802(13). Br. for Appellee at 29-30. The Government is quite wrong on this point. In *Glover*, we held only that application of § 841(b)(1)(A)'s enhancement provision based on a prior state misdemeanor drug conviction punishable by more than a year in

prison did not constitute a retroactive reclassification of that misdemeanor as a felony in violation of the ex post facto clause and did not violate the Tenth Amendment. *See Glover*, 153 F.3d at 757-58 & n.6. The court was not presented with and did not decide the statutory construction argument raised by appellant. Consequently, the decision in *Glover* does not resolve the issue raised here.

Without *Glover*, the Government's plain language argument amounts to nothing more than a bold assertion: "section 802(44) defines appellant's Maryland conviction as a 'felony drug offense' because the Marlyand conviction was 'punishable by imprisonment for more than one year' under Maryland law." Br. for Appellant at 28. This self-serving assertion, however, begs the question. The question at hand is not simply whether the language of § 802(44) defines "a prior conviction for a felony drug offense," but, rather, whether there is any language in that or any other provision of the Act plainly stating that § 802(44) *alone* gives meaning to those words as they are used in § 841(b)(1)(A). There is not.

In enacting the 1994 amendments, Congress did not amend § 841(b)(1)(A) either to specify that the new definition contained in § 802(44) was the exclusive means of determining which drug offenses would trigger an enhancement or to indicate that § 802(13) should be ignored in any determination regarding whether an enhancement was mandated. Neither did Congress amend § 802(13) or include any language in § 802(44) specifying that the former should not be considered or that the latter should be the only provision referred to in determining whether a prior drug offense requires a 10-year enhancement. *See United States v. Bombardier Corp.*, 380 F.3d 488, 495-96 (D.C. Cir. 2004) (noting that the failure of Congress to edit the existing and unamended provisions of the False Claims Act to indicate that claims need not be made to the Government

supported the conclusion that the amendments arguably suggesting that they did not were not controlling).

In the closing paragraph of its brief, almost as an afterthought, the Government summarily states that, "[b]y setting forth a separate definition of 'felony drug offense' in section 802(44), Congress maintained the status of that phrase as a term of art defined independently from section 802(13)." Br. of Appellee at 32. This argument ignores a lot in a vain attempt to prove too much. The very fact that Congress placed the definition of felony drug offense in § 802(44) – a definitional subsection that is coequal to the definitional provision under § 802(13) – significantly undermines any suggestion that its intent was to treat the phrase as a "term of art" specific to § 841(b)(1)(A) and unaffected by other relevant provisions in § 802.

At oral argument, Government counsel attempted to shore up this "term of art" argument by reference to the canon that specific statutory provisions take precedence over more general ones. This canon, the Government argued, requires that § 802(44), alone, define the words "prior conviction for a felony drug offense" as used in § 841(b)(1)(A). According to the Government, absent the explicit incorporation of § 802(13) into § 802(44), the canon prohibits resort to the allegedly more general definition contained in § 802(13). Pointing to § 841(b)(2), another enhancement provision, the Government urged that application of the canon is supported by Congress's retention of the term "felony" elsewhere in the Act. According to the Government, this demonstrates that application of the canon is not prohibited by the rule that a statute may not be read so as to make any of its provisions superfluous. There are several problems with the Government's arguments.

First, the Government's assertion that § 802(44) is a "specific" provision, and thus warrants precedence over the allegedly more "general" § 802(13), finds no support in the

structure of the statute. As noted above, both are coequal definitional provisions and neither is more or less specific or general than the other. It is no answer for the Government to say that § 802(44) employs a "term of art," because, as we have shown, nothing in § 841(b)(1)(A) explicitly points to § 802(13) or to § 802(44), and nothing in § 802(13) or in § 802(44) explicitly points to § 841(b)(1)(A). Both "felony," defined in § 802(13), and "felony drug offense," defined in § 802(44), are used in § 841(b)(1)(A). Thus, there is a glaring ambiguity as to whether either or both provisions apply with respect to a § 841(b)(1)(A) enhancement.

Second, in amplifying the first point, appellant convincingly points out that the word "felony," as used in the enhancement provisions of the Act to refer to prior convictions, always pertains explicitly to drug offenses. For example, the provision to which the Government referred, § 841(b)(2), states, in relevant part, that

> [i]f any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than . . . .

21 U.S.C. § 841(b)(2) (2000). The only "felony" to which this provision applies is a felony conviction under the Controlled Substances Act or some other federal, state, or foreign law pertaining to drug offenses. *See also* 21 U.S.C.A. §§ 843(d), (e), 848(c), (e), 853(d) (West 1999 & Supp. 2004). Thus, contrary to what the Government suggests, the term "felony," as used in the Offenses and Penalties part of the Act, does not refer to general felony convictions, but only to prior felony convictions for drug offenses. There is, then, no distinction

between a felony and a felony drug offense for penalty purposes. Consequently, there is no instance in which the so-called "general" definition of § 802(13) would apply to the exclusion of § 802(44), because each reference to a felony is a reference to a felony drug offense.

Finally, it is noteworthy that, when asked by the court, the Government could not cite a single case in which the specific-takes-precedence-over-the-general canon has been applied to a criminal statute to cure an otherwise grievous ambiguity relating to the construction of competing definitional provisions where application of the specific provision would be more detrimental to the defendant than application of the general provision. The reason is obvious: the rule of lenity applies to resolve such ambiguities in a defendant's favor.

The Government's only other argument is also quite weak. It asserts that "the fact that Congress changed the pre-1994 definition of 'felony drug offense,' not just by adding it, but by replacing its language entirely, is the strongest possible indication that it did not wish to retain the old definition." Br. for Appellee at 32-33. According to the Government, "[i]f Congress had intended the old language to remain in effect as an additional requirement in the definition of section 802(44), it would have left it there." *Id*. at 33. The Government cites no legislative history to support this proposition and we have found none. Without the illumination that such history might provide, the Government's position is no more plausible than appellant's. In moving the amended definition of the phrase from § 841(b)(1)(A) to the general definitional section of the Act and rendering it *in pari materia* with § 802(13), it is at least as plausible that Congress demonstrated its intent to limit the applicability of the enhancement provision to those instances in which the prior drug offense is *both* punishable by more than one year and classified as a felony by the controlling authority.

"In these circumstances – where text, structure, and history fail to establish that the Government's position is unambiguously correct – we apply the rule of lenity and resolve the ambiguity in [appellant's] favor." *Granderson*, 511 U.S. at 54. We may not "interpret a federal criminal statute so as to increase the penalty . . . when such an interpretation can be based on no more than a guess as to what Congress intended." *Id*. at 42-43 (quotations and citations omitted); *see also Ladner v. United States*, 358 U.S. 169, 177-78 (1958) (applying the rule of lenity in favor of the defendant after concluding that the more lenient construction "may as reasonably be read" as the harsher and "[n]either the wording of the statute nor its legislative history points clearly to either meaning").

All that the Government offers in this case is a guess as to the reach of § 841(b)(1)(A). Given the language and structure of the Act, it seems to us that it is at least as likely, if not significantly more likely, that appellant is correct with respect to Congress's intent in amending § 841(b)(1)(A). Given the rule of lenity, however, we need not guess. "To the extent that the Government's argument persuades us that the matter is not entirely free of doubt, the doubt must be resolved in favor of lenity." *Whalen v. United States*, 445 U.S. 684, 694 (1980). A ruling in favor of appellant is required, because, after application of "every thing from which aid can be derived, [we are] still left with an ambiguous statute." *Chapman*, 500 U.S. at 463 (quotations and citations omitted). In the face of such grievous ambiguity, the more lenient interpretation controls.

### III. CONCLUSION

We affirm the judgment of conviction. We remand the case to the District Court, however, with instructions to vacate appellant's sentence and to resentence appellant to the applicable mandatory minimum of 10 years' imprisonment.